Good morning. I'm James Coleman. I appear on behalf of the appellant Sean Massey. The decision in the district court was entered on an incomplete, one-sided, highly selective record that the appellees alone assembled. In effect, it was a closed, private record. It sort of brings to mind the issue that the court was discussing in the last case about the joint appendix and whether it included all of the relevant documents. I think the issue in this case is whether there was a record in the district court that included all of the relevant evidence that allowed the district court to decide as a matter of law that Mr. Massey could not show that his arrest was without probable cause or that his conviction was caused by a fabricated report that he wore his hair in braids on May 22, 1998. That's really the issue in the case. That was the only issue in the case, really, which is did Sean Massey wear his hair in braids on May 22, 1998. The complaint alleges that he did not. The complaint alleges that the victim in the case confirmed that the person who assaulted her and kidnapped her and held her family at gunpoint wore not just braids but cornrows, wore his hair braided. I thought it was four small braids. No. See, that's the problem. Where in the record does she say cornrows and not four small braids? It's in the complaint. I don't think there's an issue about that. Four small braids is somewhere because I didn't make it up. No, no, no. Well, you didn't. We allege the appellees did. You didn't, of course. But where that appears is that that is the description that Officer Esposito claimed that April Pride gave him of Sean Massey, that he wore his hair pulled back with four or five small braids at the back. That's also almost identical to the description that the police said that the victim provided of her assailant. So in both cases, in terms of what Officer Esposito claimed April Pride told him and what Officer Ojanek wrote that the victim said about her assailant, both said or in the case of Ms. Pride is alleged to have said that Sean Massey wore his hair with four braids in the back. In fact, the person who assaulted the victim in this case wore braids throughout his hair. And that fact actually came out at the trial, but it was ignored by everybody in the trial. And probably because they didn't understand the significance of it. As a result of the investigation that was done. And where is this in the complaint? I don't even know that I'm getting the significance because I thought that your client's basic argument, really a cornerstone of this argument, was that he had had braids of any sort after the certainly contemporaneous photos show he had no braids at all. And who did what to this had nothing to do with your complaint, but I'm obviously not... Well, that's not... So a cornerstone of your complaint is that the actual perpetrator here had braids. He had cornrows. Correct. Is that right? That's right. And you make this argument somewhere? Yes, that's... Were you in the proceedings in the district court? No, I was not. But it's set out in page 16 of the joint appendix, paragraph 33 of the complaint. This is a really important point. This is exactly what created the problem both at the criminal trial and I believe also in the district court. The description that the police provided and attributed to April Pride, in fact, did not describe the hairstyle actually worn by the assailant. And none of the people involved in the case understood that. As a result of the investigation that was done into Mr. Massey's claim of innocence, the victim in this case confirmed that the person who assaulted her wore his hair in cornrows. But that's all after the fact. I thought you were telling us at the time she said that. This is the clinic located and interviewed after the fact. She testified at the trial that the person's hair braids were throughout his head. She was asked by the prosecutor, were his braids at the back or were they on side to side? How were the braids? And she said they went throughout his head. That was just one statement that she made on the record. And that is what indicated in the investigation that the person who committed this crime did not just have braids at the back of his head, but had braids throughout his head. That's a really important point.  She was. She was not cross-examined about this. And we're not trying to... Was she impeached otherwise on her identification? Well, what she always said... She identified your client. Well... She identified him in the courtroom, right? No, Judge Mott. What she said was that that's the person, I believe that's the person, except that that person doesn't have braids. Right. So the issue is, did Mr. Massey have braids on May 22nd? I thought that your... I'm not exactly sure it's important that the perpetrator had cornrows or not, because your claim is it's not your client because he never had any kind of braids. Exactly. So it doesn't matter what the perpetrator had, does it? It does. It does, for this reason. Because not only did he not have braids, but he also never wore his hair. But he's now out of prison. I understand, but can I finish? And got some kind of post-conviction relief. Well, the district attorney asked that he be released and asked that the charges... We disagree with that. He got a pardon in the record? Well, he hasn't been pardoned, but we believe he was exonerated. And that... The district attorney asked for the release. Yeah, but the district attorney... I mean, I've prosecuted people and convicted them and asked the judge not to even put them in jail. But the district attorney... The fact that you're out of jail doesn't mean that you've been, a judge, wrongly convicted or not guilty. Judge King, I think it's really important for the court to understand, in this case, the significance of the fabrication that Sean Massey had braids. Because if he did not have braids, the victim... The alleged fabrication... Well, but for purposes of this motion... These officers cooked it all up to get him into penitentiary. For purposes of this motion, you have to accept that they fabricated it. You see, you can't... On a 12C motion, you can't decide it because you think it's unlikely that the allegation is true. The allegation has to be accepted as true. The... Well, that's the law. Well, excuse me. So, I generally think it's the court's determination of what the law is. I agree. And whether you like it or not. I agree. But it seems to me you had two claims here. One was that the initiation of the suit violated Fourth Amendment, right? Fourth Amendment, correct. And we have them going in front of somebody and getting an indictment, right? Well, they got an arrest warrant and then they also got an indictment. And so if we took out the evidence that you say is false and then we look and see if there is sufficient evidence to get an arrest warrant and an indictment and we conclude that there is, then the Fourth Amendment claim doesn't prevail. Here's the problem. I would think you'd be interested in what I had to say so you could respond to it. But if you're not, that's fine. I am interested. But then that leaves us with the Fourteenth Amendment claim about perpetrating this. Correct. And this is where you say that they are ginning up false evidence affected everything. Correct. And this tracks, these 1983 claims, track to some extent state law tort claims, right? Correct. That's correct. And my understanding is that in a state law tort claim with respect to continuing the suit, unless you've got some kind of final decision saying your man is not guilty, you couldn't prevail in the state tort court. Correct. And as Judge King just mentioned, I don't know that you have that here. We have an order. We don't have an order exonerating. No, no, we have an order overturning the conviction and dismissing the charges. That's all you need. Well, go read tort law. I'm not sure that is all you need. Well, that's all you need. For these purposes, it is. That's all you need to get him out of jail, for sure. But that's all you need. What page is that order in on this? 67. Thank you. And paragraph 3 on JA 68 says, Evidence that supported the conviction and still supports the conclusion that Sean Massey is the person who committed this offense includes the following. That's hardly an exoneration. Well, again, Your Honor, our point is that you can't accept that motion as setting out what the facts are as a matter of law. This is a 12C motion. How's this get in the record? Because the district attorney filed it ex parte. Filed it ex parte? Correct. Did he file it with his answer? Then how's it in the appendix if it's not in the record? Well, because they attached it to their answers. Well, they got it all right. That's in the record as part of their answer. Okay. So it is in the record. This is a 12C. It's not a 12B6. It's a 12C judgment on the pleading. Correct. Have you been to strike it? The exoneration part? There was a motion to strike. Was it a motion to strike that particular order? That's what got your client out of prison. No, no, not to strike the order. Well, then the order's in the record. And the order's in the record. We're entitled to rely on it, and so was the district judge. That's the whole point I'm making. You can rely on the order as having overturned the conviction and dismissed the charges. But you can't rely on what he recites in it. Correct. Correct. You can rely on what he recites only if you could take judicial notice of those allegations as fact. That's the difference between a 12C and a summary judgment, because we have the right to challenge the district attorney's characterization of what happened. It's not the district attorney. It's the court that released. It's in the order of the state court in the underlying case that you're talking about, is it not? But it's not based on findings of fact. No, to be sure, but that's all you have to show exoneration. There's no other evidence that you can come up to show why the state court gave the ruling it did. This is it, right? Well, that's correct. Well, then you have to rely on this is saying it gives you a base. Yes, you do, sir, because that's all you have. But not the facts. We don't have to rely on the facts. You don't have to agree with those facts, but you have to agree that that's what the state court found. That's what it thought the facts were, and that's the only basis for which it let your clients out of jail. What we're doing now is we are, under 1983, we are pursuing an independent claim. This is not about his conviction. This is about whether his constitutional rights were violated. You want damages individually from the three or two or three, how many of our officers you see. Correct. That's what 1983 does, and that's right. But it doesn't require that he be exonerated. There's nothing in the law that says he has to show he was exonerated. Well, if he was properly put to jail. That's the question. Right? Yes. That's the question. Correct. And you, in making the claim that he wasn't properly put to jail, say, look, he's been released. They're not going to retry him. And if you had a pardon, then you'd have a pretty good claim that he was improperly prosecuted and improperly, the trial was improperly gone. But you don't have that. What we have is evidence that they fabricated the evidence that led to his arrest, that led to his conviction. Okay, let me tell you this way. Suppose that we assume that they did fabricate all kinds of evidence. Not your client. Somebody else. They fabricated evidence. They got the indictment all right, but during the trial, they fabricated evidence to beat the band. Just one fabrication right after another. But the trial court, and he's convicted, and then later the trial court says, yes, there's a fabrication of evidence here, but this man was, that was all harmless error. There's so much more evidence. Correct. And therefore, I cannot, I will let him out of jail, but I am not going to give him, now, would you maintain that he has a claim then? Because the question under 1983 is whether the fabrication was material. Right. And if you would have been convicted anyway, it's not material. Well, that's correct, but that's not the case here. That's the point. That's what you say, but that is not what the state court said. Well, but this is a different issue. This is a question whether under 1983 we can maintain a claim based on fabricated evidence that he was arrested and convicted as a result of that. But you don't have a 1983 claim for the conviction unless you can demonstrate, as you said, that it was material. Correct. And the way you look to see it was material is to see what the relief was. And the relief here wasn't. Okay, I'm going to let you talk for five additional minutes. Your time is gone. Okay. But you go ahead and make your argument. Five more? Okay. Well, if we look at the issue of probable cause, for example, the question is what… I mean, he was convicted beyond a reasonable doubt. And the order we've just been talking about doesn't disturb that. Well, but the reason… So there's plenty of probable cause, and you had an indictment in that severity. You had an indictment severity. But the issue is… That's settled law. But the issue is what was the basis for the probable cause? There's proof beyond a reasonable doubt that hasn't been disturbed. Well, it has been disturbed because… That's plenty of probable cause. Well, not based on this order that you like part of it but don't like the rest of it. Well, my point is that you can't rely on recitation of facts set out… You can rely on what the court did, and it did not exonerate your client. It released him from prison. And it overturned the charges and vacated his conviction. In other words, it restored the status quo prior to his arrest. And the question is whether his arrest was the product of the fabrication. The record doesn't even include the affidavit that they used to obtain the arrest warrant. They put in the arrest warrants but not the affidavit. And what they do is they argue under a case, Brown v. Gilmore, that the court can look at all of the circumstances to decide whether there was probable cause. That's the wrong case. The relevant case is Martin v. Prince George's County, which is a case that involves an arrest warrant. And the question there under that case is, take away the fabricated evidence and put in the truthful evidence that was left out. And if you do that, would there be probable cause? And in this case, the fabricated evidence was that Sean Massey wore braids. And the truth was that not only did he not wear braids, but his hair was too short to braid. If you put that evidence in, then the victim herself would have conceded that he was not the person who attacked her. Because she always conditioned her identification on the assailant having braids. And Sean Massey did not have braids. And for purposes of this appeal, the court has to accept that as being true. Thank you very much. Thank you. May it please the court. I'm Jim Cooney of the state of North Carolina. I'm acting as lead counsel for the defendants in this case, and I've reserved four minutes of the appellee's time so that Mr. Peterson can address the issues that are raised in the motion to dismiss on behalf of Detective Ledford. I'd like to start off by talking about a couple of things that Professor Coleman mentioned. You can start off where he left off. In other words, this business is about taking out of the affidavit the evidence that it certainly was false, and then would there have been probable cause without it? Absolutely. And why is that? Because we had effectively three identifications in surrounding circumstances of Mr. Massey. Well, he maintained that the victim's identification was dependent on the fact that the gentleman had braids. But it wasn't. Four small braids. It wasn't. And, in fact, in the courtroom she identified him not only by his face, and she said that specifically, but by his voice as well. This was a man who was with her for 30 minutes, threatening her, threatening her children, trying to rape her, and then robbed her. And she recognized his voice as well in the courtroom. She made a valid in-court identification. She made an out-of-court identification that was found to be constitutionally reliable. She stood up and identified him in court by both face and by voice. In addition, we have a property manager, Teresa Saville, who puts him on the property at about the time of the crime, making his alibi defense impossible. And, finally, April Pryde, the witness he places so much emphasis on in terms of the alleged fabrication, her testimony made his alibi defense impossible. So we have three people who put him there at the scene of the crime, and there's no contest. There's no dispute that April Pryde and Teresa Saville made accurate identifications. So we know he's there at the time of the crime. He's proffered a false alibi defense. And we also know that the perpetrator had intimate knowledge of the apartment complex. So you're maintaining that even if you take out all the testimony about the braid and you substitute that that was wrong, there were no braids, there would still have been probable cause? Correct. If you just take out the braids issue, there's still plenty of probable cause. Now, what Professor Coleman's attempting to do is to turn it on its head. He's saying, well, it's a malicious prosecution case. So the fact that you have to put in there is, effectively, that he's innocent. Well, that's not the way malicious prosecution cases work, either at state law or under the Fourth Amendment. I think Judge Motz in Evans v. Chalmers in footnote 7, you noted specifically that it is the plaintiff's obligation to plead with specificity the fact that he or she claims was false or omitted from the warrant. And it's a fact. It's not a legal conclusion. And, in effect, what Professor Coleman is asking is that you insert a legal conclusion, Mr. Massey couldn't have done it, into the warrant. And that's how he gets over the hump of probable cause, which, as you point out, Judge King, there is probable cause not only based on the testimony in court, there's evidence sufficient to convict based on this testimony in the court, which goes way past probable cause. Well, let's talk about, it seems to me he had two claims. He has this Fourth Amendment claim, which is the initiation of the prosecution. But he also has the claim about the use of this evidence during the trial. And that's a due process claim, if you will. And explain to me why that, because it seems to me that's a stronger claim for him. Well, and I'll call that the Washington against Wilmore claim, because I think that's the leading case from this circuit that talks about it. I think you're right. And Yonner pointed out the difference between the two cases. Wilmore was exonerated based on DNA evidence. He was indisputably innocent. What we have here is probable cause and sufficient evidence so that they don't meet that threshold. But more importantly, the only fabricated evidence reported in this complaint is Officer Esposito's written statement that April Pry told him that Mr. Massey wore four or five braids, whereas the victim had said four small braids in the back of the head. That's what I thought, but apparently all this testimony really is that the real person wore dreadlocks. Well, and as Yonner pointed out, that apparently is evidence. There's no affidavit. The complaint's not verified. I mean, there's no evidence of that in this record other than a bare allegation that after the conviction, the Duke Wrongful Convictions Clinic went out and determined it was cornrows and got the victim to admit it was cornrows. But that's all after the fact. That's not as of the time, and as you pointed out, Your Honor, you measure the police officer's knowledge by what they knew at the time. Now, the reason that fabrication doesn't support the alleged fabrication, doesn't support a due process claim, is it wasn't the legal cause of the conviction. There was a limiting instruction given on that specific evidence. The court turned to the jury and said, you may consider Officer Esposito's testimony only for the purpose of corroborating April Pride and for no other purpose. I thought that they thought that everybody that said that there were these four small braids was lying. No. Everybody fabricated. No, and in fact, there is no allegation or even hint of an allegation that the police told, for instance, the victim what April Pride had said or had directed the victim to Mr. Massey's photograph. The victim looked at roughly between 42 and 48 photographs. Mr. Massey's was the only one she picked out. That same photograph was picked out by the property manager and was identified later by April Pride as being Mr. Massey. That alone is probable cause, and it isn't dependent on braids. And I think Professor Coleman wants to characterize and needs to characterize braids as somehow being like DNA. Well, braids aren't like DNA. Hair is not like DNA. Back when I had hair, I could change it. I could cut it short. I could dye it. I could put on a wig. I could do any number of things to it. I can't do that to my DNA. And to argue somehow that the braids are the definitive piece of the case just mischaracterizes what's in that trial record. Well, what they do have is the fact that their man has now been let out because of this, because of what the state did. Well, no, and if I can disagree just slightly, they did provide some later evidence, but the other issue was the district attorney, the assistant district attorney, didn't turn over Brady evidence about the victim's equivocation before she made a positive identification. Now, this district attorney did the right thing. It's his job to ensure that justice is done. You want to encourage that kind of exercise of discretion. He decided on balance, while I could try him again, while there's still substantial evidence, it undermines my confidence in guilt beyond a reasonable doubt, and the right thing to do is let him out of jail. That's not an exoneration. Was that order kind of an agreed order then that starts on page 67, or was it contested? It was not contested. And certainly, and Professor Coleman can address it, but he certainly had many conversations with the district attorney. The prosecutor had a right to retry him if he wanted to. Absolutely. That's what I'm getting at. And the prosecutor in the exercise of discretion. The prosecutor never did concede that there was no basis for the conviction. Correct, and the prosecutor in the exercise of discretion. How did that polygraph stuff get in there? It's in the order. But how did it get in the records? Who's sticking that in there? Well, I'm sure the district attorney did, because one of the things most district attorneys say is, if you say he's innocent, have him submit to a polygraph. So it was a consensual polygraph examination in connection with the effort to get him out of prison? That is my understanding. Again, Professor Coleman could address that, I'm assuming. But it's in the record, and it says he's still lying. Well, he tested deceptive on two things. Well, I've read polygraph exams, and I've had some experience with them, and I don't have a lot of confidence in them, but it says the guy thought there was deception on the crucial thing. On the braids and whether he participated in the crime. Right. And I just wondered how anybody got it in the record. I guess they stipulated to it that it got in. Otherwise, that kind of stuff is not admissible, I would think. That's correct. But there was nothing private about attaching these documents. And I want to make that point, because the complaint in this case referred to every document that we attached to the answer. And a plaintiff is not permitted to simply fashion a complaint, refer to documents, and never attach them. Right, but I thought the professor's point was that just because it's attached to the complaint doesn't mean that we necessarily accept the facts that are listed here. We accept the fact that the state court issued this opinion. That fact we have to accept, but not the underlying facts that he states as the basis. And I have to disagree with him slightly about that, because this court has said repeatedly that you're not bound by the allegations of complaint that are contradicted by written documents whose authenticity is not in question. Would you take the position that even if it hadn't been filed, that state court order, that we could have judicially noticed it in the context of this case? Absolutely. Absolutely. It's central to his claim, it's referred to in his complaint, and he doesn't dispute the authenticity of it. Indeed, he's relying on it. Can you tell us a matter certain that someone was representing Mr. Massey before the state court in preparation for this order? Yes, because they pleaded. It's actually in the complaint, I believe, in the first paragraph, where they talk about the role of the Duke Wrongful Clinic project. And the Duke Wrongful Clinic project gathered up the additional evidence. Wrongful Conviction Clinic. Wrongful Conviction Clinic. And Professor Coleman heads up that clinic, which is, I presume, why he now appears on appeal. This business about move to overturn his conviction, is that what this was a result of, the motion to overturn his conviction? I don't believe there was a formal motion filed. It's not on the record. I've never seen a formal motion, but they certainly met with the district attorney and moved him one way or the other to consider the totality of the evidence. He doesn't really, I'm looking at the complaint now, it says Mr. Massey was exonerated after the Mecklenburg County District Attorney's Office moved to overturn his conviction based on newly discovered evidence. I don't read where he says that they were party to it or they knew that this order was coming down or anything like that. Well, there was a motion filed, which, and I apologize for this, it wasn't included as part of the answer because we thought the order was the juridically significant issue. I'm not getting to actually whether there was a motion filed, because I think they say there was a motion filed. What I'm getting to is whether, sort of what Judge King was asking you earlier, whether this was negotiated or to what extent there had been argument about it or just what was going on, and maybe you don't know the answer to that. It was not contested, I know that. Did the lawyers get together to write it up and then just hand it to the judge and he signed it? I think the district attorney certainly drafted the order and drafted his motion. Whether Mr. Coleman agreed with it in its entirety, he's going to have to tell you, but my guess is he didn't object to it too virulently  and the order was entered within a day or two. I thought your representation to it was that he didn't object to it at all, not too vigorously, but at all. Well, there were no formal objections, that's certain. I mean, there was nothing filed on behalf of Mr. Massey before the state court objecting to any bit of that order or the motion. And as I say, they embraced it. And I guess to— They do these kind of things in North Carolina. Do they sometimes have the lawyers just sign off on the order and say approved by or expected by or prepared by? Or consented to, sometimes. But that doesn't say that on here. But the practice among— I practice the state court a lot, too, and I know most of the written stuff lots of times was prepared by the lawyers, and they would trade them back and forth. They didn't like it. They would say expected by and objected to. They'd sign it, though, because they knew the judge was going to sign it. Actually, the motion is in here. But it doesn't show any service process on the other side. Well, and again, Professor Coleman is going to have to answer this. And I think he's already presented to us that this was all secret, so I think this is the secret. No, no, that's not what he was talking about being secret. Oh, no? He knew about that, I can assure the court. And I think Professor Coleman will inform the court that he knew the district attorney was going to do this because he asked the district attorney to do it. Right. That had been the point of presenting everything. Your Honor, it is a practice among North Carolina attorneys in a rule of court that you run orders by the other side before submitting them. And sometimes there's a— Proposed order. Correct, Your Honor, before submitting it to a court. So that's certainly a standard practice. And to close off the loop for you, Judge Mott, the only fabrication is this single statement in April Pride's testimony. And because of the limiting instruction, as a matter of law, that's not the legal cause of the conviction. And I think Your Honor touched on what legal cause means in evidence against Chalmers. You know, there's no way you can say but for that single line admitted for the purpose of corroboration, Mr. Massey would have been freed. That's what is required in order to state a claim for the due process violation. Thank you very much. Thank you. Professor? Oh, I'm sorry. Of course. I'm not a lawyer. I'm getting senile. May it please the court, Daniel Peterson for Detective Ledford. I'm here before the court today to just briefly request that the appeal as to Detective Ledford be dismissed. The plaintiff appellee did not object to the magistrate judge's recommendation that the claims against Detective Ledford be dismissed in their entirety. And therefore, as this court has held over and over again, they are foreclosed from seeking relief from this court. Quote, the timely filing of specific objections to a magistrate judge's recommendation is necessary to preserve appellate review of the substance of that recommendation when the parties have been warned of noncompliance. But the district court didn't dismiss it based on the magistrate's recommendation. That's correct, Your Honor.  That's correct, Your Honor. Well, isn't that an implicit rejection of the recommendation that it be dismissed? I don't believe so. Well, go ahead, then. I thought the Supreme Court, I thought there was law about that. There is. You said it sort of resuscitated it. In other words, if you didn't take advantage of the fact that there was no objection. I believe that actually it's that there is no, that the law in this matter is that it doesn't resuscitate it insofar, it doesn't excuse the plaintiff's noncompliance with Rule 72, that the district court is free to reconsider it sua sponte because as in the Matthews case back in the 70s that the plaintiff actually cites to, it never does eviscerate the district court's responsibility for their cases, that being the Magistrate's Act. However, I do believe that it is still the state of the law that it doesn't, just because the district court engages in that sua sponte review, that does not revive the right to an appellate review in this circuit. This has been cited. It just rested on the technicality that they didn't file objections. Then the judge went on after they didn't and considered it on the merits. Your Honor, I'm sorry. Right? I think I missed something. Procedurally. Procedurally, that's what this motion is about. I fully concur and adopt Mr. Cooney's discussion with regard to why my client is entitled to have the district court judge's affirmance of the magistrate judge's result affirmed by this court, if that made any sense, Your Honor. However, in the last several years, I did find case law by pro se prisoners, et cetera, that did address that they were explicitly warned that they needed to file objections. They did not, and this court chided them as such and sent it back or affirmed the result. And I have not located any case law that I am aware of that would, the added wrinkle of a sua sponte review would, as a result, waive that requirement. In fact, in an unpublished opinion back in 19- You'd say then that sua sponte review of the merits by the district court is surplus, Your Honor. I always hesitate to say that the district court's recommendation is surplus, Your Honor. However, I would say that it really is kind of an, I guess it would be a surplus, and to the extent that the plaintiffs have thus waived their right to bring whatever the district court, if the district court affirmed the result of the magistrate judge, they have then waived their right to bring it to this court. Obviously, it would be a different scenario if they, if the judge had reversed the magistrate judge. But this court has, again, an unsighted opinion in a case called Enree Search Warrants Served on Home Health and Hospice Care Incorporated, a table decision at 121 F 3rd 700 in 1997, a per curiam opinion, that the court noted that even when the district court revisits an issue unobjected to and affirms the magistrate, the aggrieved party still has waived their right of appeal to this court. And that was in response to the United States government's failure to make timely objections. And I'm happy, I see my time's up, I'm happy to take any questions.  Thank you. Thank you, Your Honor. Well, on the last point, let me just say that if the court looks at Thomas v. Arnn 474 U.S. 140, I think the law is clear that if the district court examines the issue that is  then allows the party to appeal as a matter of right. And the court, in this case, explicitly did that on page 476 of the joint appendix, indicated that- I think you should re-read Thomas v. Arnn. Okay. You're right, it is like this case, like the district court in Thomas reviewed the magistrate judge's report de Supreme Court determined that appellant had waived appellant arguments by failing to object to the magistrate judge's report recommendation. So the district court can, without any appeal, look at the arguments de novo, but on appeal, we can say they're waived. Okay. I don't know that it affects you much either way, because you still have your complaint against these other options. I think that's right. It's a minor part of this case. That's a very minor part of this case. Well, it's not actually a minor part of the case. So if your appeal with respect to him is gone, then you've lost? We haven't lost. It's just that he's not a party. Right. But he played a substantial role, though, in what happened. But they acted together. So the fact that one of them is not a named party isn't going to affect what the evidence is in the case. I would like to, and I think this goes outside of the record, but that sort of seems to be how we're proceeding here. I would like to explain what happened with the exoneration. It's not in the record. There is a record that could be produced, and I think that's the appropriate. So you're still calling that an exoneration? I am, and I will explain to you why. Was the prosecutor, would he have been within his rights to retry him, based on that order? If you'll let me explain what happened. Is that a yes or no? No. Based on that order? Not retrying, one might say. Well, not based on what he agreed. Oh, so there was an agreement. Yes. So there's another deal that's not in the record. That's exactly what I'm saying. To agree. The prosecutor agreed with him. The district attorney did. With whom? With Mr. Massey through his lawyers. So Mr. Massey agreed to this order? Didn't agree to the order. We didn't know that the order was being filed. He filed it ex parte and filed the order and filed the motion at the same time. Who filed it ex parte? The prosecutor? The prosecutor. And you never saw it? And when did you first see it? He called us and told us that the order had been entered and that we could go pick up Mr. Massey. And did you file a motion for reconsideration? Well, why would we do that? Because he had overturned the conviction. Well, you disagreed with it, which apparently would you do. Well, I didn't disagree with the result because that was the correct result, which was that the conviction should be overturned, the charge is dismissed with prejudice, and he would be released immediately. On the face of this order, though, he could be retried. I don't think so. Well, on the face of the order. You say there's a side deal, but on the face of the order, it doesn't reflect that, that the prosecutor is barred. I don't think. Maybe it does. I am pretty sure that it was dismissed with prejudice. But if the prosecutor, if the court is interested in what actually happened, because there's a reference to a polygraph examination, for example, and the question is, well, what's the point of that? We found the victim in the case. The order is the striking of the verdict and the immediate release. Okay. That's what the order says. Okay. We found the victim because we read in the transcript her testimony. When an issue is asked, the prosecutor said, let me direct your attention to those braids, Ms. Wood. Did the braids go all through his hair, or were they just on the back or just on the sides? Where were the braids? Her answer, they went through. That's on page 137 of the joint pen. This is going to explain to us about the polygraph test? Yes. The polygraph exam, when we raise a number of issues with the district attorney, including misconduct by the prosecutor, including the braiding violation, including that Mr. Massey did not wear braids at the time of this incident. What he offered on the spot was that if Mr. Massey passed a polygraph examination, he would release him. He took the polygraph examination. We were told in advance that he might not be able to pass it because he had been in prison for so long. The person who did the examination said that he thought he was deceptive on a couple of the questions. Involvement in the incident and hairstyles. Well, I'm not sure that that's a correct characterization of what the questions were. That's how he characterizes it. That's what this record shows. Well, but there's also a record. There is a document that indicates exactly what the question was. But what happened after that was. But all we have is this court order that says deception on two issues, his involvement in the incident, and two, his hairstyle at the time. That's what the record reflects. Except that I don't think that the court is suggesting that you can rely on the result of a polygraph examination. It looks to me like if you all agreed to have the thing. But it was irrelevant because subsequent to the polygraph examination, we found the victim. She agreed that the person who attacked her had cornrows. We sent her photographs of cornrows. She confirmed that that's the way the hair was done. The district attorney at that point said that if the Charlotte Police Department went to Georgia and interviewed the victim and that she confirmed that the assailant had cornrows, then he would agree that Mr. Massey could not have been the assailant and would release him. He sent a Charlotte Police detective to interview her. He asked her to draw a picture of what the hairstyle looked like. She did. She confirmed that they were cornrows. And on the basis of that, the district attorney drafted this order and had it entered and called us and said, you can pick him up. And so there was no discussion between you all and the district attorney's office about the order at all? None. Even though there was this traveling by the police and the discussion of the results of the polygraph? No, that's not true. We were told that he was considering filing a motion, and he sent us a draft of something that he was considering. We sent him a draft. And then the next thing we knew, he filed what he filed. We did not have an opportunity to respond to it. But my representation to the court is that there are facts, actual facts, that will show that what is set out in that order is simply not an accurate recitation of what happened. Is it incomplete or is it, in your opinion, wrong? He's misstating facts. Both. Yes. That's a pretty serious allegation to make, that another officer of the court is actually misstating facts. Particularly when you made no suggestion to the trial court that there was a misstatement of the facts as the basis for the relief here. And you didn't appeal it. Because I thought that the motion was self-serving in that it was written in order to take away the sting of a wrongful conviction. I think that was the motive for the order. Well, then that sounds to me like a good basis for you, since you had had to, at least as I read the law, to have something close to exoneration or something close to it to get this order corrected. I mean, you're telling me you thought it was self-serving, pro-government, giving them a reason. And so if that was so, if you recognized it as so, then it sounds to me like you didn't get anything. You knew it wasn't close to exoneration. You didn't get it, and it was necessary to get it. Except that there's no requirement under 1983 that there be an exoneration. But you all, the ones that started that, you allege it's an exoneration. That's how we got into it. You allege it's an exoneration, and it's not an exoneration on the face of it. Well, what's alleged is that it was a conviction in violation of the Constitution. That's different. That's not about how the charges were, how the conviction was overturned, but about how the conviction was obtained. Well, we would agree if the conviction is never overturned, you don't have a 1983 claim. Correct. So that this end part is part of your cause. It's part of your showing your injury, and that's what, you know. But my point is that we have the right to challenge, you know, statements made in the district attorney's motion. What's happened in this case, and I think that this will be a very dangerous precedent because what it suggests is that you have a tainted trial that was affected by a fabricated report, and I don't think there's any question about that because since the assailant had cornrows, the description that the police officer claimed Ms. April Pride provided to him was not an accurate description. That's not what the person's hair looked like. So there was a fabrication. Not necessarily a fabrication, just because something's incorrect. Fabrication denotes bad intent and all those things. She denied on the oath. There are lots of times that witnesses don't remember right. There are lots of times that police officers don't write things down right. There can be lots of mistakes made along the way when they're in a hurry, and you just conclude that if you find out, get a hold of something. That is the fabrication to frame somebody up, and I don't know that that's fair. Well, Your Honor, I agree. I mean, I think that, and that's why what's unfortunate is that there is not a complete record here because if we had a complete record. Well, maybe that's right. Maybe that's what you want is to get a record. You want to show or see if you can show some of this stuff, but just to come in here and say that everybody, just because your guy got a new trial or got his verdict set aside that everybody involved in the investigation are a bunch of crooks and thieves. Well, that's not what. Fabricated evidence is really a tough situation. When the police write that a witness said that Mr. Massey wore his hair in braids at the back of his head, when, in fact, the assailant wore cornrows, when the witness whom he claimed told him that denies it under oath, then I think that's a basis that there's a fair inference from that that the report was fabricated. I don't know what else we could have had. And then we can look at the police. I'll be honest with you. I don't know the difference between braids and cornrows. I think that's part of the problem is that. It might be part of the problem. But it's important to know. Maybe it's a cultural thing, too. Well, it may be. An age thing. But personally, I wouldn't know the difference. I mean, I've read all this stuff, a lot of stuff to hear about. But it's really important to know the difference because one of the. . . Maybe the witness doesn't know the difference. Maybe the officer doesn't know the difference. I think that. . . Maybe people aren't communicating properly. I think all of that. I don't know. And that's what trials, for purposes of exploring some of these things, cross-examination is always good. I think all of that is possible. But the question is, did the police officers fabricate the report? The reason it's important to know what cornrows are is because you need long hair to have them. And we had an affidavit, and it's alleged in the complaint, from two professional barbers that based on a photograph that the district attorney had in his files, Mr. Massey's hair would not have been long enough on May 22nd to braid. So that's what we meant when I said it's non-biological DNA. He simply could not have braided his hair based on the length of the hair in March of 1998. So if that's true, then it doesn't matter what this other evidence doesn't matter. The witness made a mistake. She simply thought that Mr. Massey looked like the person. She was wrong. Thank you, Mr. Coleman. Okay, thank you. We've been very generous with your time. You have been. Thank you. We will come down and greet the lawyers and then go directly to our last case.
judges: Diana Gribbon Motz, Robert B. King, Stephanie D. Thacker